HEARTHSTONE, INC.,
Plaintiff/Appellee,

v.

HARDY MOYERS, Acting Commissioner
of Revenue, Defendant/Appellant,

and

HEARTHSTONE HAND HEWN LOG
HOMES, INC., Plaintiff/Appellee,

v.

HARDY MOYERS, Acting Commissioner
of Revenue, Defendant/Appellant.

Supreme Court of Tennessee,
at Knoxville.

April 8, 1991.

Charles W. Burson, Atty. Gen. and Reporter, Cynthia M. Odle, Asst. Atty. Gen., Nashville, for defendant/appellant.

G. Mark Mamantov, Hunton & Williams, Knoxville, William L.S. Rowe, Hunton & Williams, Richmond, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

The primary issue before the Court is whether the taxpayer's sales of log home kits, which the taxpayer erects at its customers' building sites, are resales of tangible personal property for purposes of Tennessee's sales and use tax statutes. The Commissioner of Revenue assessed sales and use tax deficiencies based upon its assertion that the transactions were not resales, but the Chancellor held that the transactions were resales. We agree with the Chancellor and affirm.

## FACTS

The taxpayers in this case—Hearthstone, Inc. and Hearthstone Hand Hewn Log Homes, Inc. (hereinafter "Hearthstone")— are engaged in the business of selling log home kits. During the audit period, 1985 through 1987, Hearthstone sold both unassembled log home kits, identified in their contracts as "Unerected Homes," and fully-assembled log homes which Hearthstone or a subcontractor erected on the customer foundations. The latter home sales are identified in Hearthstone's contracts as "Erected Homes." Hearthstone sold both unerected and erected homes to both in-state and out-of-state buyers.

Hearthstone's sales contracts, which were all executed in Tennessee, provided that title to the log home kits passed to the buyer upon delivery to the job site:

> Materials delivered to the job site shall be the responsibility of the Purchaser, and in case of theft, fire or other hazard, he shall not hold the Seller liable for replacement of the material.

Hearthstone purchased all of its building materials pursuant to "resale certificates," which, under certain circumstances, permit dealers to avoid paying sales taxes on purchases of materials intended for resale or manufacture. These building materials were delivered to Hearthstone in Tennessee; title passed from the vendors to Hearthstone in Tennessee; payment was made in Tennessee; the materials were stored in Tennessee; and they were withdrawn from Hearthstone's inventory and fabricated in Tennessee.

The sole dispute involves the tax treatment of Hearthstone's sales of erected homes to out-of-state customers. Hearthstone and its dealers collect and pay sales taxes in the states where these homes are erected. Hearthstone paid no Tennessee sales or use tax for its sales of erected homes to out-of-state customers.

## RESALES OF TANGIBLE PERSONAL PROPERTY

The Chancellor found that "Hearthstone sells its manufactured goods as tangible personal property prior to the time that the goods are ever affixed to the real estate." Consequently, the Chancellor concluded that these transactions are resales of tangible personal property occurring outside of Tennessee. Since the sales and use tax statutes both contain exclusions for property held "for resale," we first examine this conclusion of the Chancellor.

The Commissioner argues that when Hearthstone acts as a contractor for purposes of erecting homes, no resale of tangible personal property can occur. Essentially, the Commissioner views the entire transaction as one indivisible contract for the service of erecting a log home. No authority is cited for the Commissioner's point of view on this threshold matter.

Hearthstone takes the opposite position, that "Hearthstone did not act as a contractor with respect to [such] sales," and cites *Prospecting Unlimited, Inc. v. Norberg*, 119 R.I. 116, 376 A.2d 702 (1977). In that case, the court framed the issue as a purely factual one: "Whether the modules were actually annexed to the real estate by the manufacturer before it sold them or by the [purchasers] after they bought them." *Id.* 376 A.2d at 705. The court held that it was the purchasers, not the manufacturer of prefabricated homes, who were liable for Rhode Island's use tax, since it was the purchasers who "arranged the erection of the modular homes on land which they owned, and then sold the completed houses." *Id.* 376 A.2d at 703.

We decline to accept the issues as framed by either party, because both arguments mistakenly focus on the question whether or not the taxpayer acted as a "contractor." We have carefully considered *Prospecting Unlimited*, and cases from other jurisdictions, and find that, while each court construes a somewhat different taxing statute, the consistent inquiry is whether title to the personal property passed to the purchaser prior to the contractor's use of that property. *See Prospecting Unlimited, supra; Sunday River Skiway Corp. v. State Tax Assessor*, 573 A.2d 24 (Me.1990); *Katz v. State Tax Assessor*, 472 A.2d 428 (Me.1984)

■ Likewise, we hold that where title to tangible personal property passes to the buyer prior to the seller/contractor's use of that property, a resale of tangible personal property has occurred. We look to the record to determine, as a matter of fact, whether title passed to Hearthstone's out-of-state buyers prior to Hearthstone's erection of the log homes.

Our review of findings of fact in tax cases, as in other civil actions, is "de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.R.App.P. 13(d); *Sears, Roebuck & Co. v. Woods*, 708 S.W.2d 374 (Tenn.1986).

■ Hearthstone's sales agreements and the testimony of its customer services manager provided ample evidence that the risk of loss passed to the buyer upon delivery of the log home kits. The Commissioner presented no evidence to dispute that fact. Therefore, we conclude that the evidence does not preponderate against the Chancellor's finding that title passed prior to Hearthstone's erection of the kits. Since title passed prior to Hearthstone's use of the materials, we hold that Hearthstone's purchases of building materials were "for resale."

The only remaining issue is one of statutory interpretation and application. Hearthstone's purchases and sales are potentially separate taxable events, and Tennessee's sales and use taxes were enacted by separate statutory schemes; therefore, we examine separately both transactions under each tax statute, pursuant to the well-established rule that while taxing legislation is to be strictly construed against the taxing authority, the burden of establishing an exemption is on the taxpayer. *Commercial Equities Corp. v. Tollett*, 596 S.W.2d 801, 804 (Tenn.1980).

### SALES TAX

For a transaction to be taxable pursuant to Tennessee's sales tax, certain taxable events must occur in Tennessee. Tennessee Code Annotated, § 67-6-201(1), provides:

> It is declared to be the legislative intent that every person is exercising a taxable privilege who ... engages in the business of selling tangible personal property at retail *in this state.*

(Emphasis added). Tennessee Code Annotated, § 67-6-202, provides:

> For the exercise of the privilege of engaging in the business of selling tangible personal property at retail *in this state,* a tax is levied at the rate of five and one-half percent of the sales price of each item or article of tangible personal property when sold at retail *in this state;* the tax is to be computed on gross sales for the purpose of remitting the amount of tax due the state and is to include each and every retail sale.

(Emphasis added.)

■ "The elements necessary to constitute a sale are (1) transfer of title or possession, or both, of (2) tangible personal property, for a (3) consideration." *Volunteer Val-Pak v. Celauro*, 767 S.W.2d 635, 636 (Tenn.1989); Tenn.Code Ann. § 67-6-102(23)(A). Since Hearthstone's delivery and erection of log homes outside of Tennessee does not involve a transfer of title or possession of tangible personal property in Tennessee, we hold that these transactions are not taxable events for sales tax purposes.

On the other hand, Hearthstone's purchases of building materials do involve the transfer of title and possession of tangible

personal property for consideration in Tennessee. Therefore, we must consider whether these purchases qualify for any exemptions from Tennessee's sales tax.

Hearthstone argues that several specific statutory provisions exempt its purchases from sales tax. First, Tenn.Code Ann. § 67–6–102(22)(A) provides that "retail sales ... means a taxable sale of tangible personal property or specifically taxable services to a consumer or to any person for any purpose *other than resale.*" (Emphasis added.) Similarly, Hearthstone argues that its purchases are exempt because the building products are industrial materials used for manufacture into personal property *for resale.* Tennessee Code Annotated, § 67–6–102(22)(E), provides that:

Sale at retail, use, storage, and consumption do not include the sale, use, storage or consumption of industrial materials ... [f]or future processing, manufacture or conversion into articles of tangible personal property *for resale* where such industrial materials ... become a component part of the finished product or are used directly in fabricating, dislodging, sizing, converting, or processing such materials or parts thereof....

(Emphasis added.)

■ Since we have held that Hearthstone's purchases of building materials were "for resale," we agree with Hearthstone that its purchases of materials were not taxable as retail sales.

Moreover, we also agree with Hearthstone's argument that its purchases of building materials are not taxable where those materials are later manufactured for export to, and resale in another state.

It is not the intention of this chapter to levy a tax upon articles of tangible personal property ... produced or manufactured in this state *for export.*

Tenn.Code Ann. § 67–6–313(a) (emphasis added).

In *Nasco, Inc. v. Jackson,* 748 S.W.2d 193 (Tenn.1988), we held that this statute does not create an exemption from taxation for personal property exported for the taxpayer's use in another state. But we have never held that Tenn.Code Ann. § 67–6–313(a) creates no exemption for personal property exported for resale, because to do so would render that statute meaningless.

■ For these reasons, we hold that neither Hearthstone's purchases of building materials for resale as tangible personal property in other states, nor its resales of erected homes to out-of-state customers, is subject to Tennessee's sales tax.

## USE TAX

Tennessee's general use tax statute provides:

**Property used, consumed, distributed or stored.**—A tax is levied at the rate of five and one-half percent (5.5%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; *provided, that there shall be no duplication of the tax.*

Tenn.Code Ann. § 67–6–203 (emphasis added).

Tennessee also has a more specific contractor's use tax statute:

**Use of property produced or severed from earth—Exemptions.**—(a) Where a manufacturer, producer, compounder or contractor erects or applies tangible personal property, which he has manufactured, produced, compounded or severed from the earth, ... such person so using the tangible personal property shall pay the tax herein levied on the fair market value of such tangible personal property when used, without any deductions whatsoever; provided, however, that the foregoing shall not be construed to apply to contractors or subcontractors who fabricate, erect or apply tangible personal property which becomes a component part of a building, and which is not sold by them as a manufactured item.

(b) Where a contractor or subcontractor hereinafter defined as a dealer uses tangible personal property in the performance of his contract, or to fulfill contract or subcontract obligations, whether the title to such property be in the contractor, subcontractor, contractee, subcontractee, or any other person, or

892

whether the title holder of such property would be subject to pay the sales or use tax, ... such contractor or subcontractor shall pay a tax at the rate prescribed by § 67–6–203 measured by the purchase price or fair market value of such property, whichever is greater, *unless such property has been previously subjected to a sales or use tax, and the tax due thereon has been paid....*

Tenn.Code Ann. § 67–6–209 (emphasis added).

■ The Chancellor found that Hearthstone either paid, or required its distributors and dealers to pay, sales and use tax with respect to each of these sales, in the state where the erection occurred. Since both Tennessee use tax statutes contain exceptions for property which has been previously subjected to tax, we hold that Hearthstone's erection of the log home kits after their resale is not subject to the Tennessee use tax.

■ We also hold that Hearthstone's use of building materials in Tennessee for the manufacture of log home kits for resale is not a taxable use, since the statutory definition of "use," "storage" and "consumption," excludes the "use, storage or consumption of industrial materials ... for manufacture ... into articles of tangible personal property [f]or [1] resale...." Tenn. Code Ann. § 67–6–102(22)(E).

The Department argues that *Nasco, Inc. v. Jackson,* 748 S.W.2d 193 (Tenn.1988), compels a different result. In *Nasco,* the taxpayer was engaged in the manufacture and sale of various types of sporting goods. It also purchased large quantities of paper, ink, film, chemicals, and printing services used to prepare sales brochures which were distributed to venders both within and outside of Tennessee. These brochures were prepared for Nasco's own use, not for resale. We held that:

Where goods or services do become component parts of articles of tangible personal property for resale or are used incidentally to the sale of such property for resale, their acquisitions from ven-

ders are not included in the definition of retail sales ... There is no such exclusion or exemption, however, when a vendee ... uses or consumes such components in its own business operations....

*Id.* at 195 (citation omitted). Thus, in *Nasco* we carefully distinguished Nasco's exportation of goods for its own use from other cases in which manufacturers export goods for resale. One such other case is *Young Sales Corporation v. Benson,* 224 Tenn. 88, 450 S.W.2d 574 (1970), in which the taxpayer maintained an inventory of insulation material in Tennessee, some of which was installed by the taxpayer at job sites outside of Tennessee. The Department of Revenue attempted to impose a use tax on the contractor's withdrawals of inventory for use in other states. We held that Tennessee's use tax is not applicable to the value of materials withdrawn from a taxpayer's warehouse in Tennessee and shipped into another state for resale.

■ Since we have held that Hearthstone's sales of erected homes are resales of tangible personal property, both *Young Sales* and *Nasco* are consistent with our holding that Hearthstone's erection of the log home kits after their resale is not a taxable use. We hold, therefore, that neither Hearthstone's purchases of building materials for resale, nor its resales of erected homes to out-of-state customers, is subject to Tennessee's use tax.

For the reasons stated herein, the judgment of the Chancellor is affirmed and the case is remanded for the calculation of attorney fees and expenses of litigation under Tenn.Code Ann. § 67–1–1803(d). Costs are assessed to the Department of Revenue.

DROWOTA, O'BRIEN, and DAUGHTREY, JJ., and TIPTON, Special Judge, concur.

---

**1.** Since the 1988 Supplement to the Tennessee Code Annotated, a typographical error, incorrectly reporting this word as "or," has persisted.

*Compare* Tenn.Code Ann. § 67–6–102(12)(E) (1983 Bound Volume) *to* Tenn.Code Ann. § 67–6–102(22)(E) (1989 Bound Volume).