IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 16, 2010 Session

## SANDI D. JACKSON ET AL. V. CVS CORPORATION ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 28187-C      C.L. Rogers, Judge**

**No. M2009-02220-COA-R3-CV - Filed August 26, 2010**

Plaintiff, individually and as the guardian of her minor child, appeals the trial court's grant of summary judgment to the defendants on her claims for negligent infliction of emotional distress. Plaintiff claims that she and her child were harmed by the defendants' disclosure of their private health information. We affirm the trial court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Sandi Jackson, individually and as next friend of Keely Jackson.

Barry L. Howard, Nashville, Tennessee, for the appellees, CVS Corporation and CVS Pharmacy #129, Inc., and John Does 1-3.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Keely Jackson, a minor child born in 1999, was removed from the custody of Sandi Jackson, her mother, on March 10, 2004, by the Sumner County Department of Children's Services ("DCS"). A dependency/neglect action was filed in the Sumner County Juvenile Court with allegations of drug use and improper prescriptions being written by Ms. Jackson, then a nurse practitioner. This lawsuit stems from three instances in which the plaintiff claims that she and her daughter were harmed by the defendants' disclosure of their private health information during the course of the custody proceedings.

Sue Dunning was appointed the guardian ad litem for Keely on March 16, 2004. The order appointing Ms. Dunning also provided that "for the purpose of preparing for the adjudication of matters pending before the Court, the guardian ad litem shall have access to all documents and records pertaining to the child including, but not limited to, all records of the Department of Children's Services and any other medical, educational and/or psychological records." Pursuant to the court order, Ms. Dunning and Christine Carlton, general counsel for DCS, appeared at a CVS pharmacy in Hendersonville on April 28, 2004, to obtain a copy of Keely's prescription history. CVS complied with the request.

A hearing regarding the placement of Keely began in Sumner County Juvenile Court in June 2004. The CVS pharmacy was served with a subpoena duces tecum, dated June 25, 2004, ordering the custodian of records to appear at the hearing on June 28, 2004, and to bring "a copy of any and all documents, records, opinions, prescriptions, or other information in your possession regarding Keely Jackson and/or Sandra Jackson." In response, CVS faxed a copy of Keely's prescription summary to the juvenile court on June 28, 2004. CVS faxed the prescription record for Sandi Jackson to the juvenile court on July 15, 2004.

On August 6, 2004, the juvenile court ruled against Sandi Jackson and declared Keely dependent and neglected. Keely was removed from Ms. Jackson's custody. Ms. Jackson did not regain custody of Keely until March 7, 2005.

Ms. Jackson, individually and as the guardian of Keely, filed a complaint on March 3, 2006, against CVS Corporation, CVS pharmacy #3293, and John Does 1-3.[1] The complaint alleges that the disclosure of Sandi Jackson's and Keely Jackson's personal health information was "used tortiously against Plaintiffs to interfere with mother-child relationship, prevent reunification via slander, lies, defamation, professional persecution, and malicious prosecution, and to inflict emotional duress and psychological pain and suffering upon the Plaintiffs." The disclosures were allegedly made on April 28, 2004, in the form of one prescription pad copy for Keely Jackson, on June 28, 2004, in the form of twenty-three listed prescriptions for Keely Jackson faxed to the Sumner County Juvenile Court, and on July 15, 2004 in the form of ninety-six listed prescriptions for Sandi Jackson faxed to the Sumner County Juvenile Court. The complaint contains the following counts: violation of the Patient's Privacy Protection Act under Tenn. Code Ann. §§ 68-11-1501 to -1505, negligence,

---

[1] The complaint states that CVS Corporation, a Rhode Island corporation, is the parent company of CVS pharmacy #3293, located in Hendersonville, Tennessee. The complaint states that John Does 1-3 "may be one, two, or three separate persons" who were employed by CVS pharmacy #3293 on the three dates in question and had access to the PHI of Sandi and Keely Jackson. The complaint alleges that "[o]ne or more person(s) disclosed the PHI on those dates." "PHI" is not defined in the complaint, but the memorandum of facts and laws refers to the plaintiff's "personal health information."

invasion of privacy, medical malpractice, infliction of emotional distress, and defamation, and malicious harassment. The plaintiff requested damages of $22,150,000.

CVS filed a motion for summary judgment on June 15, 2007, asserting that the plaintiff's claims were barred by the statute of limitations and that the plaintiff was unable to establish essential elements of her causes of action.

A hearing on the motion for summary judgment was held on October 21, 2008, in the Circuit Court for Sumner County. At the hearing, all of the plaintiff's claims except her claim for negligent infliction of mental distress were dismissed.[2] The court considered Sandi Jackson's and Keely Jackson's negligent infliction of emotional distress claims separately.

The court ruled that Ms. Jackson's action was not timely filed, noting that under Tenn. Code Ann. § 28-3-104, the plaintiff's action must have been filed no later than one year from the date her cause of action accrued. The trial court stated the following:

> Plaintiff had actual notice and knowledge of the pharmacy records disclosure and use as early as March 2004 when Plaintiff herself gave the Tennessee Department of Children's Services a copy of the pharmacy records, June 2004 when Plaintiff herself gave a copy of child's pharmacy records to a news reporter at the reporter's request, or the June and July 2004 Juvenile Court hearings where the records were introduced and used as evidence against Mother. The Complaint in this action was filed March 3, 2006, well over one year from the accrual of this Plaintiff's cause of action.

Ms. Jackson claimed that the statute of limitations did not begin to run until she discovered that the disclosure of the pharmacy records was not in compliance with federal HIPAA statutes. The court stated that, under Tennessee law, the statute of limitations begins to run when the injury occurs or when the plaintiff discovers or should have discovered that she had a right of action. This "discovery rule" tolls the statute of limitations when the plaintiff is without means reasonably necessary to discover her claim. The court stated:

> The discovery rule, in other words, will toll the statute of limitations only when the Plaintiff had no knowledge at all that a wrong or injury has occurred.

---

[2] The only evidence of a dismissal from the record is the trial court's October 22, 2008 order, which states, "Counsel for Plaintiff at this Motion for Summary Judgment hearing announced all other claims in the Complaint were subject to dismissal which this Court granted." The trial court's order referred to the plaintiff's claim as one for "negligent infliction of mental distress," despite the claim originally being termed "infliction of emotional distress" in the plaintiff's complaint.

When a Plaintiff knows she is injured and who has caused this injury, she has discovered her cause of action and the statute of limitations begins to run.

Ms. Jackson stated that her mental distress was caused by the use of the pharmacy records in the juvenile court matter in 2004. The court thus concluded that there were no material issues of fact in dispute and that CVS was entitled to judgment as a matter of law. The court's order was designated as the final order with regard to Sandi Jackson. The infliction of emotional distress claim for Keely was reserved for further action.

The defendants filed a motion for summary judgment with regard to the remaining claim of negligent infliction of emotional distress as to Keely Jackson on May 20, 2009.

The trial court filed an order on October 2, 2009, granting the defendants' motion for summary judgment. The court found that the defendants breached no duty to Keely. Rather, they "properly and as required by law complied with Court orders to produce the records as part of a proper judicial proceeding." The court noted that the juvenile court found the evidence to be sufficient to remove Keely. The court further noted that the defendants were acting pursuant to court order and were therefore immune from the plaintiff's claim.

STANDARD OF REVIEW

Only the plaintiff's claims for negligent infliction of emotional distress are at issue on appeal. The plaintiff asserts that the trail court erred in granting the defendants summary judgment against Sandi Jackson on the issue of the statute of limitations and against Keely Jackson on the issue of duty.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008).

ANALYSIS

Sandi Jackson

On appeal, Ms. Jackson asserts that her claim for negligent infliction of emotional distress was not time barred. Tenn. Code Ann. § 28-3-104(a) provides that actions involving injury to a person must be commenced within one year after the cause of action accrued. On appeal, Ms. Jackson concedes that she "was aware that the Defendant had disclosed Keely Jackson's pharmacy records pursuant to a subpoena, in June of 2004, and she herself had provided DCS with some records." Ms. Jackson insists, however, that she was not aware that she had a right to contest the release of her records until January 2006. Ms. Jackson asserts that the discovery rule should operate to extend the limitations period because "[i]t was after she learned that she could have fought the release of the *entire record* of her daughter that she filed suit."

When Ms. Jackson learned the full extent of her legal rights is not the relevant inquiry for application of the discovery rule. "The discovery rule prevents the running of the limitations period whenever, and for whatever reason, the plaintiff could not have reasonably known he was injured." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001). "Under [the discovery] rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). "[T]here is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard." *Id.* at 533. "A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff," which would "defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims." *Id.*

In the present case, it is undisputed that Ms. Jackson's alleged injuries occurred no later than August 2004 when the juvenile court ruled against her and she lost custody of Keely. Even if Ms. Jackson was unaware of the full extent of her legal rights in 2004 when the injury occurred, she could have determined her rights within a year had she proceeded with reasonable diligence.[3] The only authority Ms. Jackson cites in support of her argument is *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169 (Tenn. Ct. App. 2007), which does not mention or discuss the discovery rule or a statute of limitations period.

---

[3] Ms. Jackson was represented by counsel at the time.

We therefore conclude that the trial court properly granted summary judgment on the basis that Ms. Jackson's claim for negligent infliction of emotional distress is time barred under the one-year statute of limitations of Tenn. Code Ann. § 28-3-104.

<u>Keely Jackson</u>

Because of her status as a minor, the claim on behalf of Keely Jackson does not fail as does Ms. Jackson's under the statute of limitations. *See* Tenn. Code Ann. § 28-1-106. The trial court dismissed Keely's claim on the basis that the defendants breached no duty to her. The court's order stated that the defendants "properly and as required by law complied with Court orders to produce the records as part of a proper judicial proceeding." As such, the court found that the defendants had immunity from the plaintiff's claim.

Under Tenn. R. Civ. P. 56.04, the grant of a motion for summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and the defendants are entitled to a judgment as a matter of law. The moving party has the burden of establishing it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 9. If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin*, 271 S.W.3d at 84; *Hannan*, 270 S.W.3d at 5. Thus, we must first determine whether CVS negated an essential element of the plaintiff's claim.

A successful claim for negligent infliction of emotional distress in Tennessee must include all five elements of standard negligence, as well as expert proof establishing that the plaintiff's emotional distress is "serious" or "severe." *Eskin v. Bartee*, 262 S.W.3d 727, 735 (Tenn. 2008). "The five elements of negligence include (1) a duty of care owed by the plaintiff to the defendant, (2) conduct by the defendant that breaches this duty, (3) an injury or loss, (4) a cause-in-fact connection between the plaintiff's injury or loss and the defendant's conduct, and (5) the existence of proximate or legal cause." *Id.* at 735 n.19.

The plaintiff asserts that the trial court erred in determining that there was no factual dispute as to whether CVS breached its duty to follow federal regulations[4] before releasing

---

[4] The parties and the court refer to the plaintiff's claim as one under the Health Insurance Portability
(continued...)

Keely's records.[5]  The plaintiff claims that a duty is created by 45 C.F.R. § 164.502(a), which she alleges required CVS to disclose to Ms. Jackson its intent to comply with a subpoena so that Ms. Jackson could challenge the release of the pharmacy records.

We need not resolve the issue of whether CVS owed the plaintiff a duty of care to comply with HIPAA.  We find that the trial court's grant of summary judgment was proper because the defendants negated the essential element of causation and the plaintiff has failed to establish a genuine issue of material fact.  The only duty Ms. Jackson has identified is CVS's alleged duty under HIPAA to notify her of its "intent to comply with a subpoena" calling for the disclosure of Keely's pharmacy records "so that she could challenge the release."  Under the undisputed facts, CVS's failure to notify the plaintiff of its intent to comply with the subpoena did not cause any injury to Keely.  Ms. Jackson was aware that CVS would be called upon to produce Keely's pharmacy records.  It is undisputed that Ms. Jackson herself provided the exact same information to DCS and news media prior to CVS's disclosures.  Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and the defendants are entitled to a judgment as a matter of law.  Tenn. R. Civ. P. 56.04.  Our examination of the record, discussed below, reveals that there is no genuine issue as to any material fact.

The defendants filed their first motion for summary judgment on June 15, 2007.  Among the material facts that the defendants alleged were not in dispute were the following three relevant to Ms. Jackson's disclosures of Keely's records:

> "Ms. Jackson admits she provided a copy of Keely's prescription record to the [*Nashville Scene*] reporter which was the same she provided to the Department of Human Services."

> "While on the stand [during the hearing regarding Keely's placement on or about June 16, 2004], Ms. Jackson was presented with a copy of Keely Jackson's prescription record and asked if it was the same she had provided to the Department of Children's Services to which she replied that it was.  DCS

_____

[4](...continued)
and Accountability Act of 1996 ("HIPAA"), which is codified in Title 45, Parts 160, 162, and 164 of the Code of Federal Regulations.

[5] The defendants also assert that the plaintiff cannot establish the elements of causation and serious or severe emotional distress.  The plaintiff's brief addresses only the element of duty.

kept Keely's pharmacy records Ms. Jackson had brought to the team decision making meeting in March 2004."

"Ms. Jackson admits she was aware of the three allegedly wrongful disclosures of her daughter's and her prescription records by CVS Pharmacy during the Juvenile Court hearing for her daughter which took place in June and July 2004."

The defendants' motion asserts that the plaintiff failed to prove at least one element in her infliction of emotional distress claim.[6] In addition to arguing that they breached no duty to the plaintiff, the defendants asserted that "there can be no negligence claim for turning over Keely Jackson's records as Sandi Jackson provided a copy of the CVS printout to the Department of Children's Services just prior to Keely being removed from her custody in March 2004, and prior to any alleged wrongful dissemination of Keely's records by CVS to the guardian ad litem or the Court."

Under Tenn. R. Civ. P. 56.03, a party opposing a motion for summary judgment must "serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed." In her response to the defendants' motion for summary judgment, Ms. Jackson asserted only that Keely's claims were not time barred pursuant to Tenn. Code Ann. § 28-1-606. The only portion of the plaintiff's memorandum of fact and law relevant to the present issue states that "Keely Jackson, a minor, claims that she also suffered emotional distress by being separated from her mother during this time [August 8, 2004[7] to March 7, 2005] which was caused by the unauthorized release of her mother's pharmacy records by CVS." Ms. Jackson failed to address the defendants' assertions regarding her own disclosures of Keely's prescription records.

Ms. Jackson's testimony at a March 6, 2007 deposition corroborates the defendants' assertions:

A: . . . The day they [DCS] asked me to meet with them I showed them my daughter's pharmacy printout, but I didn't provide them with the pharmacy records.

---

[6] In Tennessee, the sufficiency of the nonmoving party's evidence is not at issue in the summary judgment determination unless and until the moving party produces evidence that negates an essential element of the plaintiff's claim. *Hannan*, 270 S.W.3d at 10.

[7] The plaintiff's complaint states that Keely was declared dependent on August 6, 2004.

Q: You had the pharmacy record at that time of your daughter?

A: Yes, I had my daughter's printout.

Q: And you showed it to them at that time?

A: Yes.

Q: Okay. Did they get a copy of it at that time?

A: No.

Q: Okay. Why—What was the purpose of you showing them the pharmacy printout at that time?

A: They told me they needed to see all my daughter's medical records and her pharmacy records, and they wanted to meet her, and if I wanted to run up there real quick I'd be in and out. And I, you know—

Q: And that was in March of '04; correct?

A: That was March 10th, '04.

Q: All right. And that's when they took physical custody of your daughter?

A: Right.

Q: Okay. And at that point you showed them the pharmacy records from CVS for Keely; correct?

A: Yes, I showed it to them.

Ms. Jackson also acknowledged that she had an opportunity to object to the release of the records:

Q: And were you aware then of June of '04 that yours [pharmacy records] had come up there, too, by fax?

A: Oh, I was when they got there.

Q: Okay. In June of '04?

A: Yeah, that would have been the time of the trial.

Q: Okay. And did you know they had been faxed?

A: Well, yeah, because they said "We're—We're going to have CVS fax us some pharmacy records over here."

Q: Okay.

A: And my lawyer objected.

Q: Okay. And you were aware then that despite your lawyer's objection they had been faxed at that time?

A: Yeah.

Ms. Jackson further acknowledged giving Keely's pharmacy records to a *Nashville Scene* reporter:

Q: —did you show your daughter's pharmacy records to a reporter of The Nashville [Scene] or with The Nashville Scene prior to June 4th of 2004?

A: Did I show him her pharmacy records?

Q: Uh-huh.

A: I don't know. We reviewed everything and he verified facts. But did I show him a pharmacy printout? I don't know the answer to that.

Q: Well, if the story says that he was shown Keely's pharmacy records would you agree with that?

A: I wouldn't dispute it.

The trial court ruled on the defendants' motion for summary judgment and issued its order as to Sandi Jackson on October 22, 2008. In its order, the trial court noted that the plaintiff and her legal counsel were present at the juvenile court hearing in June and July of 2004, objected to the use of the records on the basis of lack of prior notice to opposing

counsel, and were overruled. The court order also stated that Ms. Jackson gave DCS a copy of the pharmacy records in March 2004 and gave a news reporter a copy in June 2004.

Following the trial court's order as to Sandi Jackson, the defendants filed a second motion for summary judgment as to the remaining negligent infliction of emotional distress claim on behalf of Keely Jackson. The defendants again stated, "Ms. Jackson admits that she provided a copy of Keely Jackson's prescription records to the reporter, which were [sic] the same she provided to the Department of Human Services." The defendants also reiterated that, at the June 16, 2004 hearing regarding Keely's placement, "Ms. Jackson was presented with a copy of Keely's prescription record and asked if it was the same she provided to DCS, to which she replied that it was. DCS kept Keely Jackson's pharmacy records that Ms. Jackson has [sic] brought to the Team Decision Making Meeting in March 2004."

In the memorandum accompanying their second motion for summary judgment, the defendants admitted "that it had a technical [HIPAA] violation in not allowing the Plaintiff time to dispute the release of Keely Jackson's pharmacy records in response to the Court's subpoena."[8] But the defendants insisted that "there is absolutely no evidence that this in any way changed what would have occurred in the Juvenile Court or that it had any effect on the amount of time Keely Jackson spent away from Sandra Jackson." The defendants further explained: "The individuals to whom the records were released were going to get the records regardless of any [HIPAA] violation. It may have extended the amount of time it took to get the records by a week, but they would have gotten the records nonetheless." The defendants also stressed the fact that Ms. Jackson had already disclosed the records to DCS, as well as the *Nashville Scene*. Ms. Jackson provided DCS with the information in March 2004, prior to Keely's removal from her custody and prior to any wrongful dissemination by CVS. Finally, the defendants insisted that the plaintiff could not prove proximate cause or cause in fact relative to Keely's alleged injuries. They insisted that "Ms. Jackson confirmed that Keely Jackson had anxiety and insomnia prior to the release of Keely's medical records in June 2004," and "Keely Jackson was already seeing a therapist prior to CVS's release of

---

[8] A letter from the Department of Health and Human Services ("HHS"), dated August 24, 2006, explains the results of an investigation it undertook after receiving a HIPAA complaint from Ms. Jackson. The letter states that "CVS failed to obtain any satisfactory assurance from the Department of Children's Services that any reasonable efforts had been made to ensure that Sandi Jackson had been given notice of the subpoena request," in violation of 45 C.F.R. § 164.512(e)(1)(ii)(A). HHS "initiated voluntary compliance efforts with CVS" and obtained satisfactory written assurance that CVS "has revised its procedure for disclosing protected health information pursuant to a subpoena" and "has provided training to its employees with regard to the revised procedure." The letter notes that "HIPAA does not afford individuals with a private right of action to recover personal damages for violations of the Privacy Rule, and it appears that CVS in this case has already mitigated to the extent practicable as required by the Privacy Rule." As a result, HHS "will not mandate any additional mitigation action from CVS." The case was closed.

Keely's medical records."[9] The defendants further stated that "there has been no expert testimony provided that shows Keely Jackson's condition were [sic] in any way affected by the release of these records."

In response to the defendants' second motion for summary judgment, the plaintiff responded that she wished to rely on her earlier response to the defendants' first motion for summary judgment, which we have already discussed. The only new information presented by the plaintiff was the affidavit of Myrna Kemp. Dr. Kemp's affidavit states that she has a Ph.D. in counseling psychology. Keely was admitted to her care as a patient on April 27, 2004 and discharged on July 12, 2004. Dr. Kemp diagnosed Keely as having an adjustment disorder with acute anxiety. Dr. Kemp concluded the following: "[I]t was and is my professional opinion that Keely Anne Jackson suffered psychological injury resulting directly from being kept separated from her mother and placed in foster custody with strangers." The plaintiff claimed that Dr. Kemp's affidavit establishes a genuine issue of material fact as to Keely's injuries. However, even if we accept Dr. Kemp's assessment, CVS could not have caused Keely's injury because Keely was separated from her mother on March 10, 2004, well before any disclosures by CVS.

Through its pleadings and the plaintiff's testimony, CVS negated an essential element of the plaintiff's claim: that CVS's disclosures caused any alleged harm to Keely. CVS successfully shifted the burden of production, and the plaintiff failed to produce evidence establishing a genuine issue of material fact. The plaintiff alleges that Keely's removal caused her severe emotional distress when CVS had nothing to do with her removal. Even when the evidence is viewed in the light most favorable to the plaintiff, her claim fails as a matter of law. There is no evidence that CVS's noncompliance with HIPAA caused harm to Keely. We therefore conclude that the trial court properly granted summary judgment for the plaintiff's claim of negligent infliction of emotional distress on behalf of Keely Jackson.

CONCLUSION

The decision of the trial court is affirmed. Costs of this appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

_____

[9] In her March 6, 2007 deposition, Ms. Jackson stated that, in 2003, Keely was seeing therapists weekly who prescribed Clonidine "for anxiety" because Keely "couldn't sleep at night." Ms. Jackson stated that Keely also worked with a psychologist at that time.